United States District Court
District of New Jersey

| | |
|---|---|
| UNITED STATES OF AMERICA | : CRIMINAL COMPLAINT |
| v. | : |
| BENJAMIN DONALD BRUNNI and | : |
| NICHOLAS MICHAEL ALBERTSON | : Magistrate No. 16-8110 |

I, Todd Anderson, the undersigned complainant being duly sworn, state the following is true and correct to the best of my knowledge and belief.

SEE ATTACHMENT A

I further state that I am a Special Agent with the United States Department of Homeland Security, Homeland Security Investigations ("HSI"), and that this complaint is based on the following facts:

SEE ATTACHMENT B

continued on the attached page and made a part hereof.

Todd Anderson, Special Agent
Department of Homeland Security
Homeland Security Investigations

Sworn to before me and subscribed in my presence,

September 9, 2016          at Newark, New Jersey
Date                       City and State

Honorable Leda Dunn Wettre
United States Magistrate Judge
Name & Title of Judicial Officer         Signature of Judicial Officer

1

## ATTACHMENT A

### COUNT ONE
### (Selling Firearms Without a License)

On or about September 9, 2016, in Warren County, in the District of New Jersey and elsewhere, defendants

**BENJAMIN DONALD BRUNNI**
**and**
**NICHOLAS MICHAEL ALBERTSON**

each a person who was not a licensed importer, licensed manufacturer, and a licensed dealer, did willfully engage in the business of importing, manufacturing, and dealing in firearms, and in the course of such business did ship, transport, and receive firearms in interstate and foreign commerce.

In violation of Title 18, United States Code, Section 922(a)(1)(A) and 2.

## COUNT TWO
## (Transporting Firearms with Obliterated Serial Numbers)

On or about September 9, 2016, in Warren County, in the District of New Jersey and elsewhere, defendants

**BENJAMIN DONALD BRUNNI**
**and**
**NICHOLAS MICHAEL ALBERTSON**

did knowingly transport, ship, and receive, in interstate and foreign commerce, firearms which have had the importer's or manufacturer's serial number removed, obliterated, and altered.

In violation of Title 18, United States Code, Section 922(k) and 2.

## ATTACHMENT B

I, Todd Anderson, am a Special Agent with the United States Department of Homeland Security, Homeland Security Investigations. I am fully familiar with the facts set forth herein based on my own investigation, my conversations with other law enforcement officers, and my review of reports, documents, and other pertinent items of evidence. Where statements of others are related herein, they are related in substance and in part. Because this complaint is being submitted for a limited purpose, I have not set forth each and every fact that I know or that other law enforcement agents know concerning this investigation. Where I assert that an event took place on a particular date, I am asserting that it took place on or about the day alleged.

### Background of Investigation and Defendants' Unlawful Conduct

1. Since in or about April 2013, the United States Department of Homeland Security, Homeland Security Investigations, Newark ("HSI") has conducted an investigation of illicit sales activity on various internet-based marketplaces accessible via the Tor network.[1]
2. The investigation has revealed numerous websites that provide sales platforms to enable vendors and buyers who are users of the sites to conduct anonymous transactions online involving the sale of a variety of illegal goods, including but not limited to firearms, ammunition, and explosives.
3. As part of the investigation, an HSI undercover agent (the "UC") posing as a weapons dealer established an e-mail account to communicate with individuals online.
4. On August 8, 2016, defendant BENJAMIN DONALD BRUNNI used an encrypted e-mail address to send a message to the UC to inquire about purchasing a number of fully automatic assault rifles.
5. By e-mail dated August 10, 2016, defendant BRUNNI indicated that he would be willing to meet with the UC in person in order conduct the contemplated firearms transaction. In addition to his desire to purchase fully-automatic weapons from the UC, defendant BRUNNI claimed that he was also willing to sell firearms to the UC. Defendant BRUNNI

---

[1] The Tor is a special network of computers on the Internet, distributed around the world, that is designed to conceal the true IP addresses of the computers on the network and, thereby, the identities of the network's users. Although Tor has known legitimate uses, it is also known to be used by cybercriminals seeking anonymity in their illicit online activities. Every communication sent through Tor is transferred through numerous relays within the network, and concealed in numerous layers of encryption, such that its users believe that it is virtually impossible to trace the communication back to its true, originating IP address.

3

stated, in part, that "I move a decent amount of semis if you ever need any I could work those into the deal, they're all clean," meaning that defendant BRUNNI could provide untraceable semi-automatic weapons to the UC in order to offset the cost of the fully-automatic weapons.

6. Subsequently, from August 10, 2016, through September 8, 2016, the UC and defendant BRUNNI engaged in encrypted online negotiations for the sale of semi-automatic weapons. Ultimately, defendant BRUNNI agreed to sell ten firearms to the UC, including eight Glock-model semi-automatic handguns (the "Glocks") with obliterated serial numbers, and two semi-automatic rifles (the "ARs"), for a total purchase price of $7,550 (U.S.). Defendant BRUNNI agreed to transport the weapons from his home in Indiana to a location in Phillipsburg, New Jersey, where he would meet the UC to complete the transaction. The purchase price included $1,000 to compensate defendant BRUNNI for transportation expenses. The conversations regarding the weapons transaction are further described below.

7. On August 10, 2016, defendant BRUNNI sent the UC an e-mail message to discuss his current stock of firearms. Defendant BRUNNI stated, in part, that "[m]ainly have Glocks and AR's for the moment, can get about anything semi though within a week or so, same goes for armor." The UC replied, "[o]k, I am always looking for new suppliers who I can trust; how many can you get and what are your prices?" Defendant BRUNNI responded, in part, that "[g]enerally sell full size Glocks (17, 22, etc.) [*i.e.*, Glock Models 17 and 22] for 600-700 [*i.e.*, $600-$700] to individuals...[c]an build brand new AR's from 750 [*i.e.*, $750] to well pretty much any number depending what parts you want...[w]ill sell bulk cheaper of course, everything is clean as well unless I say otherwise...[h]ave ammo and mags as well," meaning that defendant BRUNNI could sell the UC various untraceable Glock-model handguns and assault rifles, including ammunition, and that the prices for the weapons would depend on the quantity ordered.

8. On August 16, 2016, defendant BRUNNI sent the UC an e-mail message to inquire about the status of the contemplated transaction. Defendant BRUNNI stated, in part, that "[d]o you have a gameplan for meeting up and getting the Glocks and AR's...[d]o you want anything else, I have a Springfield XO [meaning a type of handgun] and some other brand pistols, rifles, and shotguns." The UC replied, in part, "[s]end me a list of what you have available and the price for each...I can probably take a few more when we meet up...[a]lso...when you have everything ready, can you just send me a pic with the guns and a piece of paper that has the date on it so that I know you actually have everything." Defendant BRUNNI responded, in part, "[t]hat is completely fine with me with the picture...[t]he Glocks are all in good condition and I've shot them all as well to check...I can get more Glocks as well but they will link back to

4

me/my guy so I'd scratch the numbers off, will that work for you..." meaning that Defendant BRUNNI intended to obliterate the serial numbers from the handguns prior to the sale so that the weapons could not subsequently be traced back to him or any other individual.

9. Defendant BRUNNI contacted the UC by e-mail dated August 18, 2016, to provide a status update on the contemplated transaction. Specifically, defendant BRUNNI stated, "as of now I have 6 Glocks (3 G22's, 1 G17, 1 G20, and 1 G30) and one complete AR (other 4 will be done by Tuesday)...I should be able to get you a few more Glocks but I have an amount of cash I always like to have in case anything happens so would it be ok if I could get you 7-9 and make up it on the next run if we keep doing this...I can make up for Glocks with AR's and other guns I already have if that would be acceptable," meaning that defendant BRUNNI had acquired various Glock model handguns in anticipation of the contemplated transaction, and that he would be able to acquire more in the future as his business relationship with the UC progressed.

10. On August 22, 2016, defendant BRUNNI sent the UC an e-mail which stated, in part, "I never got a clear answer about taking the serial numbers off, is that okay?" The UC replied, "yeah, you can take them off, but please just try to do as little damage as possible...I have seen some people take them off and they have nearly put a hole in the gun." Defendant BRUNNI replied, "[f]or sure, I will make sure they're good files," meaning that he would take caution when filing the serial numbers off the weapons in order to render them untraceable by law enforcement officials. Subsequently, by e-mail dated August 26, 2016, defendant BRUNNI sent the UC a photograph which depicted a number of Glocks and ARs, along with a hand-written note containing the date the photo was taken.

11. On September 1, 2016, defendant BRUNNI sent an e-mail to the UC to discuss the status of the weapons transaction. The e-mail stated, in part, that "[s]o it'll be 2 AR's still and 8 Glocks...I'm cool with an extra grand...[w]ould be bringing my guy with me be [sic] okay for going this far...[h]e doesn't have to come in or anything, just close by for security," meaning that defendant BRUNNI agreed to accept $1,000 for transporting the firearms from Indiana to New Jersey, and that he intended to bring another individual with him to New Jersey to provide security for the weapons transaction.

12. In an e-mail exchange on September 6, 2016, defendant BRUNNI and the UC agreed to meet on September 9, 2016, at approximately 8:00 a.m., in the food court of a commercial highway truck stop located in Phillipsburg, NJ.

13. Based on prior communications between defendant BRUNNI and the UC, law enforcement established surveillance at the pre-arranged location (the "Truck Stop") in preparation for the delivery of the weapons.

5

14. On September 9, 2016, defendants BRUNNI and NICHOLAS MICHAEL ALBERSTON arrived at the Truck Stop in a black 2010 Mercedes GLK-350 with Indiana license plate no. LE1770 (the "Mercedes"). While under the surveillance of law enforcement officials, defendant BRUNNI exited the Mercedes and entered the Truck Stop to meet with the UC. Once inside the Truck Stop, defendant BRUNNI and the UC engaged in a recorded conversation. During this conversation, defendant BRUNNI stated that he was the individual who conducted the encrypted online negotiations for the sale of the weapons, and that he removed the serial numbers from each of the Glock handguns. After the UC showed defendant BRUNNI the money for the weapons, defendant BRUNNI used his cellphone to contact defendant ALBERTSON, who had remained in the Mercedes with the weapons. Upon defendant BRUNNI's instruction, defendant ALBERTSON delivered the bag of firearms to a second undercover law enforcement officer ("UC-2") who was also waiting the Truck Stop parking lot. After the delivery of the weapons, UC-1 gave defendant BRUNNI $7,550 for the firearms. Defendant BRUNNI then departed the Truck Stop to meet with defendant ALBERTSON in the Mercedes.

15. Defendants BRUNNI and ALBERTSON were subsequently arrested in the vicinity of the Truck Stop parking lot. Upon their arrest, law enforcement agents recovered a loaded Smith & Wesson Model 5906 S-A Pistol (the "Smith & Wesson") in the vicinity of the Mercedes driver's seat. Law enforcement officials also recovered approximately $7,550 cash from defendant BRUNNI. Additionally, the firearms recovered by UC-2 from defendant ALBERTSON included the following semi-automatic weapons: three Glock Model 22 Pistols, one Glock Model 17 Gen 4 Pistol, one Glock Model 20 Pistol, one Glock Model 26 Gen 4 Pistol, one Glock Model 30 Pistol, one Glock Model 34 Pistol, one Rugar AR-556 assault rifle, and one Anderson Mfg. AM-15 assault rifle. The serial numbers from each of the Glock handguns were obliterated and unrecognizable.

16. After his arrest, defendant ALBERTSON waived his Miranda warnings and agreed to speak with law enforcement officials. Defendant ALBERTSON stated, in part, that he knowingly agreed to accompany defendant BRUNNI from Indiana to New Jersey in order to provide security for the weapons transaction. Defendant ALBERTSON further stated that he knew the bag he gave to UC-2 contained a number of firearms, and that defendant BRUNNI had given defendant ALBERTSON the loaded Smith & Wesson for security purposes.

17. A thorough search of relevant law enforcement databases has confirmed that neither defendant BRUNNI nor defendant ALBERTSON had active or expired licenses to engage in the business of importing, manufacturing, or dealing in firearms, and had no license authority to ship, transport, or receive firearms in interstate or foreign commerce.